JOHN KARALES and Others, Plaintiffs, *v.* GEORGE K. BOSSON, Defendant.

Supreme Court, Erie County, November 4, 1929.

*Clarence M. Fuhr* [*Samuel M. Fleischman* of counsel], for the plaintiffs.

*William O. Carroll*, for the defendant.

CHARLES B. WHEELER, Official Referee.  This action is brought to recover damages for a breach of an alleged contract to sell and convey certain real property located at Tonawanda, N. Y.  The

main defense is that no valid and binding contract was made by the parties. The defendant inserted in one of the Buffalo newspapers the following advertisement.

"*Sacrifice* — Delaware Ave. business corner, 120 feet on Delaware Ave. by 169 feet on Canton St.; this property is located in city limits of Tonawanda, and it is on highest elevation there; I am offering this property for quick sale at $5000, half cash, or will allow 10% discount for all cash. Communicate with George K. Bosson, 222 Columbia Bldg., Miami, Florida, or see Mr. Phillies, 2025 Liberty Bank Bldg., Buffalo."

Whatever contract was made is evidenced by the following telegrams sent and received.

"GEORGE J. BOSSON,
"222 Columbia Bldg. Miami, Fla.

"Seen your advertisement regarding your property on Delaware and Canton Tonawanda New York I can pay cash for it so designate Bank here in Buffalo as your representative so will pay deposit and draw contract I understand the price is five thousand dollars ten percent off for cash subject to twenty Five hundred dollar mortgage answer if it is correct and what bank here in Buffalo Marine Trust Company Liberty Bank for Manufacturers and Traders Peoples Trust Company I would like a prompt answer as I am leaving town.
"JOHN KARALES,
"170 Kinsey Ave.,
"Kenmore, N. Y."

"MIAMI, FLA 1007A  *Oct.* 12, 1927.
"JOHN KARALES,
"348 Military Rd.

"Price five thousand will allow ten percent discount on twenty-five hundred dollars for all cash if acceptable wire me to hold same send contract to sign with five hundred dollar certified check to me to Bank of Biscayne here.
"GEO. K. BOSSON,
"1142A"

"NB693  NL  MIAMI  FLA  14            *Oct.* 14, 1927.
"JOHN KARALES,
"170 Kinsey Ave. Kenmore, N. Y.

"If your bank wires me at once that you have placed with them in escrow two thousand dollars for my equity and you agree to assume twenty-five hundred dollar mortgage now due on Delaware Avenue property will forward deed and search to your Bank will prorate interest and taxes.
"GEO. K. BOSSON."

"*Oct.* 17, 1927.

" Geo. K. Bosson,
        " 222 Columbia Bldg., Miami, Fla.
    " Draw draft for two thousand dollars on me with deed and other documents necessary attached be surrendered on payment only have deed made out in the following names John Karales Anastos J. Fatouros John E. Zanetos Arrange with your Bank to send draft to Marine Trust Co.        " JOHN KARALES "

" NA 122610 Nite Miami Fla 17                    *Oct.* 17, 1927.
" John Karales,
        " 170 Kinsey Ave. Kenmore, N. Y.
    " Deed will follow as per your wire of October seventeen.
                                " GEO. K. BOSSON."

There is no dispute as to these telegrams except as to the last of them. As to this the defendant testified that it was sent by a clerk in his office at Miami after he had started from there for the city of Buffalo, and was without his knowledge or direction. On the other hand, the plaintiffs contend that on the arrival of the defendant in Buffalo he went to see Karales, one of the plaintiffs, and had an interview with him, when all the telegrams were shown the defendant and he then acknowledged the sending and receipt of all.

The question, therefore, is whether they constitute a valid and binding contract for the sale of the property in question. It seems to the referee that the serious question is whether the alleged contract contained a promise on the part of the defendant to sell and an agreement on the part of the plaintiffs to buy. The negotiations are evidenced by the telegrams, after several telegrams had passed relating to the sale of the property.

On October seventeenth the plaintiff Karales wired the defendant: " Draw draft for two thousand dollars on me with deed and other documents necessary attached be surrendered on payment only, etc."

The defendant in his prior telegram to Karales had demanded the deposit in a bank of $2,000. The plaintiffs' telegram to the defendant of October seventeenth did not constitute an acceptance of the defendant's proposition, but was a modification thereof which the defendant was at liberty to accept or decline.

On the receipt of this telegram from the plaintiff one was sent in the name of the plaintiff saying: " Deed will follow as per your wire of October seventeen."

The defendant contends not only that this last telegram was not sent by himself, but by a Mr. Davis connected with his office, but

further contends that it constituted no valid or binding contract, for the reason that it left the plaintiff the option to accept or refuse payment on the $2,000 draft mentioned in the plaintiffs' telegram of the seventeenth of October; and that nothing less than a positive and unconditional promise to pay met the requirements to constitute a valid and binding contract between the parties. If the telegram to draw for $2,000 did not bind the plaintiff to accept and pay the draft on presentation, then the contention of counsel for the defendant that no valid contract to sell was made is correct. It would lack mutuality of promise. Defendant's counsel cites in support of his position section 220 of the Negotiable Instruments Law, reading: " Acceptance; how made. The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money."

Section 224 also provides that " The drawee is allowed twenty-four hours after presentment in which to decide whether or not he will accept the bill."

In connection with these sections should be read section 223 providing: " An unconditional promise in writing to accept a bill before it is drawn is deemed an actual acceptance in favor of every person who, upon the faith thereof, receives the bill for value."

It has been held by the highest court of this State that instructions to draw a draft is equivalent to an unconditional promise to pay the bill of exchange. (*Ruiz* v. *Renauld*, 100 N. Y. 256; *Merchants' Bank* v. *Griswold*, 72 id. 472; 7 Cyc. 771, and cases cited.)

Consequently this referee must hold that when the plaintiff wired the defendant to draw draft on him for $2,000 he legally bound himself to pay the draft on presentation and it cannot be said it was optional with the plaintiff to refuse to accept or pay. He was bound to honor the draft. If the defendant, therefore, accepted the proposition of October seventeenth that constituted a binding contract between the parties.

It is contended, however, that the reply telegram was not in terms an acceptance inasmuch as it only said: " Deed will follow as per your wire of October seventeen."

It is argued that no mention is made in that telegram of any draft. But we are of the opinion this telegram must be read and construed in connection with the plaintiffs' telegram of the seventeenth, and when the words " as per your wire of October seventeen " are considered, it clearly means the deed will follow with draft

and other papers as proposed and stated in the plaintiffs' telegram to the defendant. It seems to us that it is incapable of any other meaning.

As to the contention that the defendant's telegram was not in fact sent by him, but by a Mr. Davis connected with his office, the referee is of the opinion that the weight of evidence is that it was either sent by the defendant himself or authorized by him.

The plaintiff Karales testified that all the telegrams were shown the defendant when he came to Buffalo, and he acknowledged he had received or sent them all. The defendant first claimed in his testimony that he left Miami for Buffalo on the seventeenth day of October before the telegram purporting to have been signed by him was sent. Later on cross-examination he stated it might have been on the nineteenth day of the month. If it was the nineteenth it was after the telegram of the eighteenth was sent. Davis was not called as a witness to corroborate the defendant's claim that it was sent without authority. It is quite improbable Davis would have assumed to speak for the defendant without authority from him, and when the matter is considered with the testimony of Karales that the defendant acknowledged sending the telegram of the seventeenth, the referee reaches the conclusion of fact that that wire was either sent or authorized by the defendant.

The referee is further of the opinion that the terms of the agreement are sufficiently set forth in the exchange of telegrams. The property was sufficiently identified. The price was $5,000. The purchaser was to assume the existing $2,500 mortgage, the balance of $2,500 was to be paid in cash less a discount of $250. Proper allowance was also to be made for accumulated interest and taxes which were to be prorated.

No essential elements seem to be lacking to make a complete and binding agreement. We are of the opinion that the plaintiffs are entitled to recover.

The referee does not now determine the amount of the damages. The defendant has by consent reserved the right to call one witness on values. When that witness has been heard the referee will decide as to the amount of the recovery.